**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Arnold ARONSON, Defendant-Appellee.**

**Nos. 77–3341, 78–2537.**

United States Court of Appeals,
Fifth Circuit.

May 15, 1980.

---

M. Carr Ferguson, Asst. Atty., Gen., Gilbert E. Andrews, Act. Chief, App. Section, Leonard J. Henzke, Jr., Jo Ann Horn, Attys., Dept. of Justice, U. S. Tax Div., Washington, D. C., for plaintiff-appellant.

Robert A. Shupack, North Miami Beach, Fla., for defendant-appellee.

Before SIMPSON, HILL and HATCHETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In 1969, the IRS made "responsible officer" penalty assessments totalling $164,-930.96 against Arnold Aronson.[1] Apparently unsatisfied with the speed with which appellee was paying off the assessments, the IRS filed a lien upon real estate held by appellee and his wife as tenants by the entirety. In 1972, the Aronsons filed a joint income tax return for 1971 in which they claimed an overpayment and requested a refund of $718. The IRS applied the entire amount to the balance still owing on the responsible officer assessments. The Aronsons then filed a suit in the Southern

---

1. A responsible officer is "[a]ny person required to collect, truthfully account for, and pay over any tax . . . ." 26 U.S.C.A. § 6672. The government's claim was based on appellee's failure, as a responsible officer of Joe W. Sullivan Concrete Service, Inc., to remit employment taxes owed by the company for the last two quarters of 1967 and the first two quarters of 1968.

District of Florida, seeking removal of the lien and return of that part of the overpayment attributable solely to the earnings of Mrs. Aronson. The suit was dismissed with prejudice in 1975 after the parties entered into a settlement agreement which provided that the IRS would return that part of the overpayment attributable to Mrs. Aronson's earnings and credit the remainder to the responsible officer debt.

In 1976, the government commenced this action, seeking to reduce the responsible officer assessments to judgment. The district court granted appellee's motion for summary judgment, holding that the government's claim should have been asserted as a counterclaim in the refund suit and was therefore barred by the doctrine of res judicata. We reverse.

Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." In view of the imprecision of the statutory language, the courts have developed a number of tests to aid in deciding when a counterclaim is sufficiently related to the main claim to be compulsory.[2] In this circuit, we have adopted the "logical relationship" test. *Plant v. Blazer Financial Services, Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970). Under that test, we find a logical relationship when "the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Plant*, 598 F.2d at 1361.

Applying the logical relationship test to the facts in this case, we find that the government's claim did not arise out of the same transaction or occurrence as the claim asserted in the Aronson's refund suit. The refund suit was based on an overpayment of taxes for the 1971 tax year. No claim was made that the responsible officer assessments were invalid.[3] Although appellee was a plaintiff in the refund suit, the purpose of the suit was to protect the rights of Mrs. Aronson, whose only connection with the responsible officer assessments was that she was married to the responsible officer. This suit, on the other hand, arises directly out of the assessments imposed on appellee alone for the 1967 and 1968 tax years.

At best, the two claims are only incidentally related. The policy underlying Rule 13(a)—avoidance of multiplicity of law-

---

**2.** Four separate tests have been developed by the courts:

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
(2) Would res judicata bar a subsequent suit on defendant's claim absent the counterclaim rule?
(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
(4) Is there any logical relation between the claim and the counterclaim?

6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1410, at 42 (1971) (footnotes omitted).

**3.** As evidenced by the following passages from the Aronson's complaint, it appears that, at least for purposes of the refund suit, appellee conceded the validity of the responsible officer assessments:

7. The said tax liability against which the overpayment was applied is a 100% penalty assessed solely against Arnold Aronson individually as provided by Section 6672 of the Internal Revenue Code, and is not a debt of his wife, Mary Lee Aronson. Evidence of the application of the said overpayment is attached hereto, made a part hereof, and designated as Exhibit C.

10. As grounds for recovery, Plaintiffs state that Form 1040 is a Joint Return and the overpayment is a joint asset held by both taxpayers as Tenants by the Entireties, and under Florida law, property held as Tenants by the Entireties, cannot be levied upon or otherwise used or applied against tax liability solely of one spouse. The same issue was previously litigated between Plaintiffs and Defendant, a copy of which Judgment is attached hereto, made a part hereof, and designated as Exhibit F.

11. The overpayment may not be applied against the 100% penalty assessed solely against Arnold Aronson individually because a substantial portion of the income on which the tax was due and from which the overpayment arose is attributable to the earnings of Mrs. Aronson alone.

Record, at 51–52.

suits—would not be furthered by requiring that such claims be litigated together. We hold, therefore, that the district court erred in granting appellee's motion for summary judgment and dismissing the government's suit. In view of our holding, it is not necessary for us to decide whether Congress intended that Rule 13(a) apply to claims by the government for taxes. *Compare Caleshu v. United States*, 570 F.2d 711 (8th Cir. 1978) *with Crocker v. United States*, 323 F.Supp. 718 (N.D.Miss.1971) *and United States v. Thompson*, 262 F.Supp. 340 (S.D. Tex.1966).

REVERSED.