**UNITED STATES of America, Plaintiff,**

**v.**

**AMTRECO, INC., et al., Defendants.**

**Civ. A. No. 90–31–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Feb. 20, 1992.

Order on Reconsideration April 6, 1992.

Frank L. Butler, III, Michael C. Daniel, Asst. U.S. Attys., Macon, Ga., Heidi E. Weckwert, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Berrien L. Sutton and Howard Slocumb, Sutton and Slocumb, Homerville, Ga., for

defendants Amtreco and James L. Dickerson.

Charles A. Perry, Alan M. Wolper, Hunton & Williams, Atlanta, Ga., for third-party defendants American Tel. and Tel. and Western Elec.

## ORDER

OWENS, Chief Judge.

Before the court is plaintiff's motion to dismiss defendants' counterclaim. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Plaintiff United States ("the government") filed this action against defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(a), (b), and § 9607(a), to recover costs incurred during a cleanup operation of hazardous waste at a site in Homerville, Georgia ("Dickerson site"). The cleanup operation lasted from July, 1987, to March, 1988, and allegedly cost $953,240.88. Defendants Amtreco and James Dickerson are the "operator" and "owner", respectively, of the Dickerson site. The government also seeks civil penalties for defendants' alleged failure to adequately respond to an information request made pursuant to CERCLA, 42 U.S.C. § 9604(e)(1), (2) and (5).

Defendants have filed a counterclaim against the government, in which they allege four state tort claims. In three of these claims, defendants contend that government agents caused unreasonable damage and loss to defendants' property during the cleanup operation. Thus, defendants seek compensation for conversion and property damage.[1] The fourth claim alleges "false swearing" in that government agents swore falsely under oath and falsified records to bring about the cleanup operation and to exaggerate its necessity, scope, and incurred costs in order to inflate the EPA's budget request to Congress.

## DISCUSSION

◼ The government bases its motion to dismiss on sovereign immunity. Because defendants' counterclaim is asserted against the government, defendants must show that the government has waived sovereign immunity. If sovereign immunity has not been waived, this court has no subject matter jurisdiction over defendants' counterclaim and, consequently, the counterclaim must be dismissed.

The government offers two grounds to show that sovereign immunity has not been waived. Both of these grounds are based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, which waives sovereign immunity over certain tort claims under certain circumstances. Because defendants' counterclaim is made up of four state tort claims, the government argues that the FTCA exclusively governs whether the court has subject matter jurisdiction over these claims.

The government's first contention is based upon 28 U.S.C. § 2675(a), which states that an FTCA tort claim must be filed with the appropriate federal agency prior to any federal court proceeding. It is undisputed in this case that defendants have not filed a complaint with the EPA concerning these claims.

The government's second contention is based upon the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a). The government argues that even if defendants are not required to exhaust their

---

1. Count One specifically alleges that government agents damaged storage tanks and the treatment plant during the cleanup operation, and defendant Amtreco seeks to recover the value of this property. In addition, this count alleges that government agents took and used saw dust belonging to defendant Amtreco, and it seeks to recover the value of the sawdust.

Count Two specifically alleges that government agents took raw materials from the property, defendant Amtreco seeks to recover their value.

Count Three alleges that government agents contaminated some of the soil on the site, and defendants seek to recover for costs associated with treatment or removal of the contaminated soil.

administrative remedies, the government still has not waived sovereign immunity because the counterclaim involves a discretionary function.

■ Defendants argue that even if they have failed to establish subject matter jurisdiction under the FTCA, their counterclaim should not be dismissed because it is a recoupment claim. The government waives sovereign immunity over proper recoupment claims merely by filing suit. *Frederick v. United States*, 386 F.2d 481 (5th Cir.1967).

### 1. Defendants' Failure to Exhaust Administrative Remedies

■ Under 28 U.S.C. § 2675(a), when a defendant has failed to exhaust its administrative remedies prior to filing an FTCA action in federal court, the court has no subject matter jurisdiction over a counterclaim unless it is compulsory. *Northridge Bank v. Community Eyecare, Inc.*, 655 F.2d 832 (7th Cir.1981).

■ The Eleventh Circuit has adopted the "logical relationship" test for determining whether a counterclaim is compulsory.[2] *Republic Health Corp. v. Lifemark Hospitals*, 755 F.2d 1453, 1455 (11th Cir.1985); *United States v. Aronson*, 617 F.2d 119 (5th Cir.1980); *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979); *Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970 (S.D.Fla.1985); *see also Montgomery Ward Development Corp. v. Juster*, 932 F.2d 1378 (11th Cir. 1991) ("every compulsory counterclaim must necessarily pass the 'logical relationship' test").

Defendant relies on *United States v. Chatham*, 415 F.Supp. 1214 (N.D.Ga.1976), to support its contention that defendants' counterclaim in the case at bar is not compulsory. *Chatham* was decided prior to *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir.1979), in which the old Fifth Circuit expressly adopted the "logical relationship" test. Thus, *Chatham* is not controlling in the case at bar.[3]

Under the logical relationship test, a logical relationship exists "when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant in the defendant.'" *United States v. Aronson*, 617 F.2d 119 (5th Cir.1980) (quoting *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979)).

In *Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970 (S.D.Fla.1985), the district court found that a logical relationship did exist between the two claims at issue. The plaintiffs sought relief for defendant's acts in preventing plaintiffs from gaining access to certain documents and for defendant's acts in destroying those documents. This claim was based on the Florida Public Records Act and 42 U.S.C. § 1983. Defendant filed a counterclaim alleging abuse of process, invasion of privacy, malicious threats, interference with his right to hold office, and malicious prosecution. Defendant based these claims on plaintiffs' acts when they tried to obtain access to the documents and their response when they did not obtain access.

---

2. The government has filed numerous briefs which apparently argue that the Eleventh Circuit has not adopted the "logical relationship" test for determining compulsory counterclaims. These arguments have no merit, particularly when the government fails to cite any Eleventh Circuit case in support.

3. In *Chatham,* the district court held that defendant's FTCA counterclaim alleging trespass, invasion of privacy, and unreasonable search and seizure was not compulsory in a suit in which the government alleged that defendant had committed fair housing violations. Defendant's counterclaim was based on the allegedly tortious conduct committed by government agents

during their investigation of defendant. *Id.* at 1216.

The court found that the claims were "functionally dissimilar" in that the controlling legal and factual issues raised by the claims are not the same, defendant's claim would not be barred by *res judicata* in a subsequent suit, and the evidence to prove a fair housing violation would not be similar to that used to prove the tortious conduct of the federal agents. Thus, defendant's counterclaim was not compulsory and was dismissed. The court did not apply the more flexible "logical relationship" test which has since been adopted by the Eleventh Circuit.

In making its determination, the district court noted that "the logical relationship test 'is a loose standard which permits a "broad realistic interpretation in the interest of avoiding a multiplicity of suits. The hallmark of this approach is its flexibility." ' " *Id.* at 973 (quoting *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979) (citations omitted)). Applying this "flexible" standard, the court found that the counterclaim arose out of the same "aggregate of operative facts." The fact that additional allegations were needed to prove the counterclaim did not change its compulsory nature. The claims were "essentially 'offshoots of the same controversy between the parties' and thus 'fairness and considerations of convenience and economy' dictate that ancillary jurisdiction should be exercised." *Id.* (quoting *Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir.1970)).

■ In the case at bar, defendants' claims alleging conversion and property damage are logically related to the government's claim for cleanup costs. All of the claims arise from the same occurrence—the cleanup operation of the site. The government is seeking payment for its activities in removing hazardous waste from the Amtreco site, and defendants are seeking payment for damage to property caused by government agents during those same activities. These claims are "essentially 'offshoots of the same controversy' between the parties." Thus, defendants' claims for conversion and property damage meet the flexible "logical relationship" standard for compulsory counterclaims.

■ In contrast, defendants' false swearing claim is not logically related to the government's claim for recovery of CERCLA cleanup costs. In *Republic Health Corp. v. Lifemark Hospitals*, 755 F.2d 1453 (11th Cir.1985), the Eleventh Circuit found that there was no logical relationship between a claim filed in bankruptcy court and a claim filed in federal district court. *Id.* at 1455. The bankruptcy claim was filed by a creditor who challenged the validity of a purchase agreement between the bankruptcy debtor and a third party. The third party later filed a claim against the creditor in federal court claiming that the creditor's challenge to the purchase agreement, among other things, violated antitrust laws. *Id.* at 1454.

The court held that the third party's claim was not logically related to the bankruptcy claim because it did not arise out of the same operative facts as the bankruptcy claim. *Id.* at 1455. The court found that, while the antitrust claim encompassed the creditor's challenge to the purchase agreement, this claim also involved a wide range of allegations concerning the creditor's attempts to prevent market entry by the third party. Thus, the antitrust claim went far beyond the narrow issue involved in the creditor's challenge to the purchase agreement in bankruptcy court. The claims were not logically related. *Id.; see also United States v. Aronson*, 617 F.2d 119 (5th Cir.1980).[4]

Likewise, defendants' false swearing claim goes well beyond the cleanup operation. Defendants allege in this claim that government agents "swore falsely under oath and falsified records in an attempt to bring about action by EPA and to incur

---

**4.** In *Aronson*, the Fifth Circuit also did not find a logical relationship. In 1969, the IRS made "responsible officer" penalty assessments against a taxpayer and filed a lien upon the taxpayer's property. In 1972, the taxpayer and his wife filed a 1971 joint tax return claiming a refund, and the IRS applied the whole amount of the refund to the 1969 responsible officer assessments. The taxpayer and his wife filed a suit in district court seeking a removal of the lien and return of that part of the refund solely attributed to taxpayer's wife. In 1976, the IRS filed suit to obtain judgment on the 1969 penalties. The taxpayer claimed that this claim was a compulsory counterclaim in the earlier suit and therefore, the action should be dismissed. *Id.* at 120–21.

The Eleventh Circuit found that there was no logical relationship between the two claims. The refund suit was based on overpayment of taxes during the 1971 tax year, and its purpose was to protect the rights of the taxpayer's wife. The later suit arises from penalties assessed against the taxpayer alone during the 1967 and 1968 tax years. Hence, the two claims did not arise from the same transaction or occurrence. *Id.* at 121.

enormous costs all in an effort to present a picture that said employees and agents were dealing with enormous hazardous waste problem at Amtreco and in an effort to expend monies for the purpose of presenting budget request to Congress." Thus, the activities at the cleanup site are merely a small part of the claim. The claim covers a wide range of allegations that not only relate to the EPA's conduct at the site but also to the EPA's conduct in designating the site as hazardous and in preparing its budget request for Congress. This conduct covers the time period before, during, and after the cleanup operation and has allegedly continued up through the government's filing of the suit. Thus, the claim is not logically related to the government's claim and is not compulsory.

Hence, the government's argument that the court lacks subject matter jurisdiction due to defendants' failure to exhaust its administrative remedies applies only to the false swearing claim. The other claims are compulsory; therefore, the requirement that defendants exhaust their administrative remedies does not apply to them.

### 2. The Discretionary Function Exception

■ The government's second argument is based on 28 U.S.C. § 2680(a), the "discretionary function" exception to the Federal Tort Claims Act. Under § 2680(a), the government does not waive sovereign immunity over:

> Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

Only defendants' claims for conversion and property damage have survived the FTCA requirement that defendants must exhaust administrative remedies. Thus, if these claims are based upon government performance of a discretionary function, the court lacks subject matter jurisdiction over these claims under the FTCA.

Each of these claims involves activities of government agents during the cleanup operation at the Dickerson site. The activities of the agents were performed based upon EPA decisions on how to conduct the cleanup operation. Courts have consistently held that EPA decisions on how to conduct a cleanup operation are shielded by the discretionary function exception. *See U.S. Fidelity & Guaranty Co. v. United States,* 837 F.2d 116 (3rd Cir.), *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988); *United States v. Skipper,* 781 F.Supp. 1106 (E.D.N.C.1991); *United States v. Colbert,* 1991 WL 183376, 1991 U.S. Dist. Lexis 12790 (S.D.N.Y. Sept. 11, 1991) ("claims arising out of the conduct of government employees in carrying out an EPA response action may not be brought under the FTCA because they fall within the discretionary function exception of that statute."); *United States v. Nicolet, Inc.,* 1987 WL 8199, 5–6, 1987 U.S.Dist. Lexis 5076, 14–17 (E.D.Pa. Mar. 19, 1987) ("It is clear that the conduct involved in determining which sites to place on the priority list and choosing appropriate cleanup, containment and removal methods, is the type of conduct Congress intended to shield from tort liability.... [W]e are faced with the formulation of a means to carry out a congressional directive. That formation did involve policy determinations and it is, therefore, shielded by the discretionary function exception."). This court agrees with these other decisions and finds that defendants' conversion and property damage claims are based upon a discretionary function.

Thus, the FTCA does not provide subject matter jurisdiction over defendants' conversion and property claims. They are based upon discretionary functions; therefore, the government has not waived its sovereign immunity under the FTCA.

### 3. The Recoupment Claim

Even though the court has found that it lacks subject matter jurisdiction over defendants' counterclaim under the FTCA, defendants contend that there is an alternative ground for subject matter jurisdiction. Defendants argue that their counterclaim is essentially a claim for recoupment and as

such the government has waived sovereign immunity over it.

■ If a tort claim is a proper recoupment claim, then a defendant does not have to meet the requirements under FTCA to establish jurisdiction. *United States v. Johnson*, 853 F.2d 619 (8th Cir.1988) (when the government waived sovereign immunity by bringing suit to recover on a loan, the borrower could assert a negligent misrepresentation claim arising from the same transaction even when such claim is normally barred by the FTCA); *United States v. Ownbey Enterprises, Inc.*, 780 F.Supp. 817 (N.D.Ga.1991). The government, merely by filing suit, waives sovereign immunity as to recoupment claims. *Frederick v. United States*, 386 F.2d 481 (5th Cir.1967).

■ There are three requirements for a proper recoupment claim. First, the recoupment claim must arise "out of the same transaction or occurrence which is the subject matter of the government's suit." *Id.* at 488. Second, it must involve relief of the same kind and nature as that sought by the government. Third, it cannot exceed the amount of the government's claim. *Id.*

■ In an earlier section of this opinion, the court determined that defendants' conversion and property damage claims were compulsory. *See supra.* Thus, these three claims meet the "same transaction or occurrence" requirement for recoupment. In contrast, defendants' false swearing claim was not compulsory; therefore, this claim is not a proper recoupment claim and must be dismissed.

Defendants' conversion and property damage claims also meet the second requirement because they seek relief of the same kind and nature as that sought by the government. The government is seeking to recover monetary relief—the costs of the cleanup operation. In the same way, defendants are seeking monetary relief—compensation for loss of and damage to property that occurred during the cleanup operation.

The facts of this case are distinguishable from those in *United States v. Ownbey Enterprises, Inc.*, 780 F.Supp. 817 (N.D.Ga.1991). In *Ownbey*, the district court found that defendant's counterclaim was not a proper recoupment claim. The government was seeking civil penalties to ensure that defendant complied with an EPA order. In contrast, the defendant was seeking damages for alleged misrepresentation by the government when the defendant signed the EPA order. Thus, the two claims were "fundamentally different in scope and nature because they [sought] to rectify two different types of alleged wrongs." However, the court did note that "if [the government] had requested damages and costs, . . . , and not statutory penalties, the Defendant's requested relief would have been the same as [the government's] and, consequently, a proper recoupment claim." *Id.* at 821.

In the case at bar, the government is seeking to recover *costs* arising from a cleanup operation for which defendants are allegedly responsible. Defendants are seeking to recover *costs* of property loss and damage allegedly caused by the government when it conducted this cleanup operation. Thus, the nature and kind of relief sought is the same. *See also United States v. Moore*, 703 F.Supp. 455 (E.D.Va. 1988) (in government suit to recover costs of CERCLA cleanup response, defendant's counterclaim for value of fire extinguishers taken by government agents during cleanup was proper recoupment claim).

Finally, the third requirement is met to the extent that defendants' conversion and property damage claims do not exceed the amount sought in the government's claim.[5] The government argues that because defendants' counterclaim seeks affirmative relief, it is not a proper recoupment claim. Affirmative relief is not permitted in a recoupment action. *Frederick*, 386 F.2d at 488.

While defendants' Answer and Counterclaim does ask "That Defendant Amtreco recover of Plaintiff under Amtreco's counterclaim such sums of money as the court

---

**5.** Because the government is seeking $953,-240.88, it is difficult to imagine that defendants'

claims could possibly exceed the government's claim.

deems fair and equitable under the evidence", this pleading also asks "That Plaintiff recover nothing from Defendants." Thus, defendants are not only seeking affirmative relief but also to reduce or eliminate the government's claim. Hence, to the extent that defendants' counterclaim seeks to reduce or extinguish the government's claim, the counterclaim is a proper recoupment claim. As a proper recoupment claim, this court has subject matter jurisdiction over it because the government filed this action.

Accordingly, plaintiff United States' motion to dismiss is GRANTED IN PART and DENIED IN PART. Counts One, Two, and Three of defendants' counterclaim may remain to the extent that they are valid recoupment claims. Count Four is DISMISSED for lack of subject matter jurisdiction.

SO ORDERED.

### ORDER ON RECONSIDERATION

Before the court is plaintiff's motion to reconsider its order of February 20, 1992, in which the court denied in part plaintiff's motion to dismiss defendants' counterclaims. On further consideration of this question, the court finds that even though defendants' counterclaims are recoupment claims, they are outside the court's subject matter jurisdiction. For a federal court to question conduct within the discretionary function of an employee of the executive branch is a violation of the doctrine of separation of powers. *Williams v. United States,* 747 F.2d 700 (11th Cir.1984), *aff'g,* 581 F.Supp. 847, 852 (S.D.Ga.1983) ("sound principles of judicial restraint in the face of governmental administrative activity dictate that cases involving discretionary functions be removed from the jurisdiction of the courts."). Accordingly, the court GRANTS plaintiff's motion for reconsideration and DISMISSES Counts One, Two, and Three of defendants' counterclaim.

SO ORDERED.