George Ronald OWENS, an individual Florida resident; Mid–America Drilling Equipment, Inc., a Florida Corporation; and Drillmaster Corp., an Alabama Corporation, Plaintiffs,

v.

BLUE TEE CORP., a Delaware Corporation, d/b/a George E. Failing Company, Defendant.

and

BLUE TEE CORP., a Delaware Corporation, d/b/a George E. Failing Company, Plaintiff,

v.

MID AMERICA DRILLING EQUIPMENT, INC., Defendant.

Civ.A. Nos. 95–D–1466–E, 97–D–1349–E.

United States District Court, M.D. Alabama, Eastern Division.

Feb. 10, 1998.

C.S. Whittelsey, III; Davis B. Whittelsey, Opelika, AL, for Plaintiffs.

Michael D. Waters, Hugh C. Nickson, III, W. Mark Anderson, IV, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Currently pending before the court are the following motions filed in 95–D–1466–E ("Alabama Action"): a motion to dismiss filed on December 22, 1995, by defendant Blue Tee Corporation d/b/a George E. Failing Company ("Gefco")[1]; a motion to dismiss Gefco's Counterclaims One, Two, Three and Five filed by Plaintiff Mid–America Drilling Equipment, Inc. ("Mid–America") on January 16, 1996; an alternative motion to transfer venue filed by Gefco on February 15, 1996; and, last, a motion for oral argument filed by plaintiffs Mid–America, George Ronald Owens ("Owens") and Drillmaster Corp. ("Drillmaster"). Also before the court is a Joint Stipulation of the Parties Prior to Consolidation of Actions, filed February 4, 1998. The motions have been fully briefed by all parties. After careful consideration of the arguments of counsel, the law, and the record as a whole, the court finds that the motions to dismiss are due to be granted in part and denied in part. The Motion to Transfer Venue is due to be denied.

In an order dated May 30, 1997, the court stated that upon review of a joint status report, it would make a determination as to whether oral argument is necessary before ruling on the Parties' respective motions to dismiss and Defendant's alternative motion to transfer. First, the court notes that it currently has more than four hundred cases on its civil docket and a great number of others on its criminal docket. Thus, the court simply does not have the time to grant and hear all oral arguments requested. After reviewing the record in the instant case, the court is of the opinion that it has sufficient information to determine the issues before it.[2] Accordingly, the court finds that Plaintiffs' request for oral argument is due to be denied.

The court finds that Gefco's counterclaims One, Two, Three and Five, as asserted against Mid–America, are due to be stricken, on the court's initiative, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Additionally, the Parties stipulate that Claim Four of Gefco's counterclaim is due to be dismissed with prejudice, as is Plaintiffs' Claim Four. Accordingly, Mid–America's Motion to Dismiss is due to be denied as moot.

## BACKGROUND

In July 1989, Gefco contracted with Mid–America and Owens, the president and sole owner of Mid–America, to distribute Gefco products, primarily water well drilling equipment and accessories, in Florida, South Alabama and South Georgia. In May 1991, Gefco, Mid–America and Owens entered into an exclusive distribution agreement, but in August 1991, Gefco canceled the exclusivity provision. Significant disagreement exists

---

**1.** The December 22, 1995, motion to dismiss was also filed by defendant Jeff Smith, an individual Oklahoma resident. On May 30, 1997, the court granted the motion to dismiss in part, dismissing defendant Jeff Smith from this action and reserving ruling on whether Plaintiff Mid–America's claims against Gefco are due to be dismissed.

**2.** On July 14, 1997, the court, through its law clerk, conducted a telephonic conference, during which the court directed several questions to the parties concerning the nature of their claims. Counsel Mike Bigheart, Hugh Nickson, Mark Anderson and Davis Whittlesley were in attendance. The court has used information gleaned from counsels' responses during the conference to supplement the factual background provided in this Memorandum Opinion and Order.

over the August 1991 letters.[3] Gefco interprets the letters as a cancellation of the agreement which made Mid–America the exclusive distributor of Gefco products, but not a termination of the agreement that Mid–America was to distribute only Gefco products. Mid–America, on the other hand, contends that the termination letter ended *all* exclusivity agreements between Mid–America and Gefco.

Sometime subsequent to the August 1991 letters, Mid–America and Owens contracted with Drillmaster for the distribution of Drillmaster's products. On January 30, 1995, Gefco sent another letter to Owens and Mid–America, this time terminating the relationship between Gefco and Mid–America. Two days later, on February 1, 1995, Gefco sent a notice to Mid–America's customers informing them that Gefco and Mid–America had terminated their manufacturer/distributor relationship.

On May 30, 1995, Gefco filed an action in the District Court of Garfield County, Oklahoma, against Mid–America, Owens and Drillmaster. The suit, styled *Blue Tee Corporation d/b/a George E. Failing Company v. Mid–America Drilling Equipment, Inc., George Ronald Owens, and Drillmaster Corp.* ("Oklahoma Action"), was removed to the United States District Court for the Western District of Oklahoma. In the Oklahoma Action, Gefco sought damages against Mid–America for an open account for goods purchased and breach of the 1991 exclusive dealership agreement. Gefco brought two claims against all three defendants: tortuous interference with Gefco's contractual relationship with its customers in Florida and Georgia and deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act, 78 O.S. § 51 *et seq.*, in the form of false and misleading statements of fact with the intention of disparaging the goods, services and business of Gefco. Finally, Gefco brought a claim of breach of fiduciary duty of good faith and fair dealing against Mid–America and Owens.

Gefco's claims appear to have arisen from events surrounding the distribution agreement and its subsequent termination. To support its tortuous interference claim, Gefco contends that Mid–America and Owens wrongfully contracted with Drillmaster in violation of Mid–America's agreement to distribute only Gefco's products. Additionally, Gefco contends that in connection with this violation, Mid–America and Owens made disparaging statements and claims in Florida about Gefco's products. On July 27, 1995, the Honorable Wayne E. Alley, District Judge for the Western District of Oklahoma, dismissed Gefco's action against Owens and Drillmaster for lack of personal jurisdiction. All of Gefco's claims against Mid–America remained intact, and, to date, Mid–America has filed no counterclaim against Gefco.

Three months after the Oklahoma court dismissed Drillmaster and Owens for lack of personal jurisdiction, Drillmaster, Owens and Mid–America filed suit in the Middle District of Alabama against Gefco and Jeff Smith ("Alabama Action"). The three Plaintiffs claimed damages for the following: fraud and/or misrepresentation concerning the exclusivity provision in the distribution agreement; tortuous interference with the contractual relationship between Mid–America, Drillmaster and Owens; tortuous interference with the business relationship between Mid–America, Drillmaster and Owens; and violation of the Uniform Deceptive Trade Practices Act in the form of making false and misleading statements of fact with the intention of disparaging the goods, services and business of Mid–America, Drillmaster and Owens. With regard to the fraud and/or misrepresentation claims, Mid–America contends that Gefco's August 1991 letters to Mid–America and the February 1995 letter

---

**3.** There were two letters sent to Mid–America by Gefco. The first letter, dated August 7, 1991, was a letter informing Mid–America that Gefco would "still consider [Mid–America] to be a good distributor, but not in the same exclusive fashion [Gefco] had envisioned." Pl.'s Compl., Ex. D. The second letter, dated August 26, 1991, was a memorialization of a meeting between Ron Owens, President of Mid–America, and Jeff Smith, President of Gefco. In this second letter, Smith stated that "[Mid–America's] position is being changed from an Exclusive Distributor to a Non-Exclusive distributor. As a result, payments for indirect sales into [Mid–America's] area will not be made." Pl.'s Compl., Ex. E.

to Gefco/Mid–America customers were willful or reckless misrepresentations, on which Mid–America relied in developing accounts with other drilling manufacturers including Drillmaster. Mid–America contends that as a result of these misrepresentations it suffered various damages, including the loss of substantial commissions for the sale of Gefco products.

In support of its claims against Gefco for tortuous interference and violation of the Alabama Deceptive Trade Practices Act, Mid–America first points to the February 1, 1995, notice to Mid–America and Gefco's customers, in which Gefco urged the customers to contact Gefco employees directly while it reestablished itself in the area. Mid–America also contends there was a concerted effort by Gefco to destroy Mid–America's relationship with its customers as evidenced by a Gefco internal memorandum dated May 4, 1995. In this memo, Larry West, a Gefco employee, details his visit with a "Smokey," a former Gefco customer, who had recently purchased Drillmaster equipment from Mid–America. During this visit, West apparently quizzed the former Gefco customer about his selection of Drillmaster drilling rigs and, at a minimum, acknowledged the dissolution of Gefco and Mid–America's business relationship. Finally, Mid–America cites Gefco's request for an injunction in the Oklahoma suit in May 1995 as a deliberate attempt to interfere with Mid–America's business and contractual relations.[4] Mid–America argues that these incidents give rise to a claim of tortuous interference with business and contractual relations as well as a claim that Gefco violated Alabama's Trade Practices Act.

In response to the Alabama Action, Gefco filed an answer and, by way of counterclaim, alleged all the causes of action against Mid–America that it already had pending in the Oklahoma action. Moreover, Gefco also included the causes of action against Drillmaster and Owens which the Oklahoma court had dismissed for lack of personal jurisdiction. Only Count Four varies in that Gefco

alleges violation of the Alabama Deceptive Trade Practices Act in his counterclaim, while alleging violation of the Oklahoma Deceptive Trade Practices Act in the original complaint filed in Oklahoma.

Gefco filed a partial motion to dismiss on December 22, 1995, arguing that Mid–America's claims against Gefco are compulsory counterclaims in the Oklahoma action and that they should therefore be dismissed. In the alternative, Gefco has requested the court transfer and consolidate this entire action with the Oklahoma action, pursuant to 18 U.S.C. § 1404(a). In response to Gefco's counterclaims, Mid–America also filed a partial motion to dismiss, requesting the court dismiss Gefco's counterclaims One, Two, Three and Five against Mid–America. After Gefco and Mid–America filed their respective motions to dismiss in this action, the Oklahoma court stayed proceedings in its action. However, initial discovery was initiated and, admirably enough, the parties agreed to allow any discovery conducted to apply to both cases, as appropriate.

On September 5, 1997, Judge Alley of the United States District Court for the Western District of Oklahoma issued an order transferring the Oklahoma Action to this court, pursuant to 28 U.S.C. § 1404(a). On December 12, 1997, the court entered an Order consolidating the above cases. Hence, the court now has pending before it both the Oklahoma Action and the Alabama Action.

## DISCUSSION

**A. Gefco's Counterclaims One, Two, Three and Five, as Asserted Against Mid–America, Are Due to Be Stricken Pursuant to Rule 12(f); Mid–America's Motion to Dismiss Is Due to Be Denied as Moot.**

Count One of Gefco's counterclaim is a claim for payment from Mid–America for sums owed on an open account. Count Two of Gefco's counterclaim is a claim against Mid–America for breach of contract. Count

---

4. Gefco requested temporary and permanent injunctive relief to restrain Mid–America, Owens and Drillmaster from making false and misleading statements in regard to Gefco's goods, services and business or from otherwise violating the provisions of the Oklahoma Deceptive Trade Practices Act. It does not appear that the Oklahoma court has granted such injunctive relief.

three of Gefco's Counterclaim is a claim against Mid–America, Drillmaster and Owens for tortuous interference with contractual or business relationships. Count Five of Gefco's counterclaim is a claim against Mid–America, Drillmaster and Owens for breach of fiduciary duty. The court finds that these claims, as alleged against Mid–America, are identical to those alleged in Gefco's complaint in the Oklahoma action. In addition, the Parties have so stipulated. (Joint Stip. Of the Parties Prior to Consolidation of Actions ¶¶ 6, 7, 8, 9.)

Rule 12(f) provides that a court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." Federal Rules of Civil Procedure 12(f). " 'Redundant' matter consists of allegations that constitute a needless repetition of other averments." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 at 704 (1990).

Rule 12(f) allows the court to strike such matters upon proper motion by the parties or upon the court's own initiative. *See McCorstin v. U.S. Dep't of Labor,* 630 F.2d 242, 244 (5th Cir.1980)[5] (court may strike any redundant, immaterial, impertinent or scandalous matter on its own initiative). Pursuant to the court's ability to strike such matter on its own initiative, the court finds that Gefco's Counterclaims One, Two, Three and Five are due to be stricken as redundant of its claims already asserted against Mid–America in the Oklahoma action.[6] The court notes that only those Counterclaims asserted against Mid–America are due to be stricken. Thus, counterclaims Three and Five, as asserted against Drillmaster and Owens will remain.

Furthermore, the Parties stipulate to a dismissal with prejudice of Count IV of Gefco's counterclaim and Count IV of Plaintiffs'

Complaint under the Alabama Action. (Jt. Stip. Of Parties Prior to Consolidation ¶ 11.) Hence, Count IV of Gefco's Counterclaim and Count IV of Plaintiffs' Complaint are hereby dismissed.

Accordingly, Mid–America's Motion to Dismiss is denied as moot.

## B. Gefco's Partial Motion to Dismiss Mid–America's Claims is Due to be granted; Gefco's Motion to Transfer Venue is Due to Be Denied.

Gefco moves for dismissal of Mid–America's claims for lack of subject matter jurisdiction and improper venue. Gefco argues that Mid–America's four causes of action described in the Alabama action are compulsory counterclaims to the Oklahoma action and are due to be dismissed. In the alternative, Gefco has filed a motion to transfer this action for consolidation with *Blue Tee Corp. v. Mid–America Drilling Equipment Inc.,* in the United States District Court for the Western District of Oklahoma. In response, Mid–America argues that venue is proper and that its claims would constitute permissive rather than compulsory counterclaims. The court finds that although venue is proper, Mid–America's claims constitute compulsory counterclaims to the prior Oklahoma action and therefore should be dismissed. Gefco's Motion for Transfer of Venue is due to be denied.

### 1. *Venue is Proper.*

Pursuant to 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded solely on diversity of citizenship may be brought in (1) a judicial district where any defendant resides or (2) a judicial district in which a substantial part of the events giving

---

**5.** Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**6.** The court is well aware that a Motion to Strike is neither the authorized nor proper way to procure a dismissal of all or part of a complaint or counterclaim. 5A Wright and A. Miller, Federal Practice and Procedure § 1380 (1980). However, the court finds that here, where the same claims are pled in the Oklahoma Action, the court properly disposes of the redundancy of Gefco's counterclaims through its exercise of its powers pursuant to Rule 12(f). The redundant nature of these claims necessarily means that the issue underlying the claim will ultimately be addressed by the court.

rise to the claim occurred.[7] "[A] defendant corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). 28 U.S.C. Section 1404(a) allows a district court to transfer any civil action to a district where it might have been brought for the convenience of the parties and witnesses and in the interests of justice. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253 (11th Cir.1996). 28 U.S.C. Section 1404(a) places the decision of whether a motion for a change of venue should be granted within the sound discretion of the court. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 654 (11th Cir.1993).

■ Under normal circumstances, federal courts will accord great deference to the plaintiff's choice of forum if the forum is in the district in which the plaintiff resides. *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989). Courts faced with a motion to transfer must engage in "an individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). A district court may properly transfer a case to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most 'easy, expeditious and inexpensive.' " *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir.1981) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Furthermore, as this court has previously noted, where the forum selected by the Plaintiff is not connected with the parties or the subject matter of the lawsuit, it is generally less difficult than otherwise for the Defendant, seeking a change of venue, "to meet the burden of showing sufficient inconvenience to tip the balance of convenience strongly in the Defendant's favor." *Patel v. Howard Johnson Franchise Systems, Inc.,* 928 F.Supp. 1099, 1101 (M.D.Ala. 1996) (citations omitted). *See also Hutchens v. Bill Heard Chevrolet, Co.,* 928 F.Supp. 1089, 1091 (M.D.Ala.1996).

Here, neither party argues or presents evidence that defendant corporation, Gefco, does not "reside" within the state of Alabama. In fact, Gefco has admitted that this court has personal jurisdiction over it. *See* Answer. Instead, Gefco argues that transfer of this case to Oklahoma is proper to prevent the adjudication of two cases involving precisely the same issues. Furthermore, Gefco argues that venue in the Oklahoma court is proper according to the "well-settled first filed rule."

■ Subsequent to Gefco's filing of its Motion to Transfer, the Oklahoma Action was transferred to this court and consolidated with the Alabama Action. Thus, Gefco's argument that transfer is proper to prevent adjudication of two cases involving precisely the same issues is moot. The court recognizes Gefco's argument that, when two actions are filed concerning the same transactions, "the court with 'prior jurisdiction over the common subject matter' should resolve all issues presented in related actions." (Defs.' Response to Pls.' Mot. to Dismiss, Reply to Pls.' Resp. to Defs.' Mot. to Dismiss, and, in the Alternative Mot. for Transfer of Venue at 9 (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 730 (5th Cir.1985)).) However, the court finds that, on the whole, the Alabama Action is not *identical* to the Oklahoma Action. For example, while certain claims may be identical in each action, different parties are named in each. Specifically, the United States District Court for the District of Oklahoma did not acquire jurisdiction over Drill Master and Owens; hence they are not parties to the Oklahoma Action. Accordingly, the court finds that the "first filed rule" is inapplicable here.

■ Rather, the court finds more relevant the issue of "convenience of witnesses." "The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses;" the forum in which the majority of material principal witnesses reside is the most convenient forum.

---

7. Plaintiffs' statement that pursuant to 28 U.S.C. § 1391, in "all diversity actions, venue is proper in the district where all Plaintiffs reside, in the district where all Defendants reside, or in the district in which the claim arose" is a misstatement of the law.

*Insuracorp, Inc. v. American Fidelity Assur. Co.*, 914 F.Supp. 504, 506 (M.D.Ala.1996); *see also Merritt v. Jay Pontiac–GMC Truck, Inc.*, 952 F.Supp. 754, 756 (M.D.Ala.1996); *Hutchens*, 928 F.Supp. at 1091. Here, Plaintiffs contend that "[t]he overwhelming majority of the witnesses with knowledge of this claim reside in Alabama, Florida and Georgia." (Pls.' Resp. to Defs.' Mot. for Transfer of Venue and Request for Oral Argument at 5 (referencing Affidavit of Glenn P. Barr, Jr. and Ronald G. Owens "Ex. D and E").) Gefco offers no evidence that the convenience of the witnesses or parties will be better served by transfer of this case to the District of Oklahoma. Accordingly, the court finds that transfer of this case to Oklahoma would be improper; rather, venue in the Middle District of Alabama is proper. Defendant's Motion to Transfer Venue is due to be denied.[8]

2. *The court lacks subject matter jurisdiction over Mid–America's Claims against Gefco.*

▪ Lack of subject matter jurisdiction may be asserted by either party or by the court, *sua sponte*, at any time during the course of an action. Fed.R.Civ.P. 12(b)(1). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting the jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980). In determining whether the court properly exercises subject matter jurisdiction, the court is to "consider the allegations of the complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981). Unlike a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissals for lack of subject matter jurisdiction do not involve the merits of the claim. *Id.* at 413.

▪ The court finds that Mid–America's claims against Gefco are compulsory counterclaims to the Oklahoma Action, thus precluding Mid–America from asserting these in the

instant action. Accordingly, the court finds that it lacks subject matter jurisdiction over Mid–America's claims against Gefco in the Alabama Action.

▪ "A determination of whether a counterclaim is compulsory is not discretionary; rather, such a determination is made as a matter of law." *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1454 (11th Cir.1985). Federal Rule of Civil Procedure 13(a) defines compulsory counterclaims as:

> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Rule 13(a) Fed.R.Civ.P.

Thus, key to determining whether Mid–America's claims are compulsory under Rule 13(a), the court must determine (1) if the claims arise out of the same transaction or occurrence as Gefco's claims in the Oklahoma Action, and (2) whether Mid–America rightly asserts that the presence of Owens and Drillmaster was necessary to the adjudication of its claims against Gefco.

▪ To make a determination as to whether a claim "arises out of the transaction or occurrence," the Eleventh Circuit relies on the "logical relationship" test. *Republic Health*, 755 F.2d at 1455 (citing *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir.1980)). "Under this test, there is a logical relationship when 'the same operative

---

**8.** The court does not address plaintiffs' argument that "Gefco is estopped from claiming improper venue as an affirmative defense in that Gefco has sought affirmative relief in the United States District Court for the Middle District of Alabama against all party Plaintiffs." Pls.' Resp. to Defs.' Mot. to Dismiss (1/16/96).

facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.' " *Id.* (quoting *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1361 (5th Cir.1979)); *see also, Montgomery Ward Development Corp. v. Juster,* 932 F.2d 1378, 1381 (11th Cir.1991) (describing logical relationship test used by Eleventh Circuit and State of Florida).

For instance, in *Montgomery Ward Development Corp. v. Juster,* 932 F.2d 1378 (1991), the Eleventh Circuit held that a claim for reformation of contract was logically related to and rested on the same basis of aggregate operative facts as a prior action to determine the parties' obligations under the contract. *See also, Texas Air Corp. v. Air Line Pilots Association International,* 1989 WL 146414 (S.D.Fla. July 14, 1989) (Hoeveler, J.) (finding where plaintiffs brought claim alleging intentional destruction of union in violation of the Railway Labor Act, a claim by defendants that union engaging in activities in violation of RICO is not a compulsory counterclaim); *Savannah Forestry Equipment, Inc. v. Savannah Equipment, Inc.,* 1992 WL 249882 (S.D.Ga. Sept. 15, 1992) (Edenfield, C.J.) (finding logical, intertwined relationship between claim of conversion and counterclaim of unjust enrichment).

Mid–America argues that its claims do not arise solely out of the transaction or occurrence that is the subject matter of Gefco's claims pending in the Oklahoma Action. The court finds that Mid–America's claim of fraud and/or misrepresentation most certainly arises from the same operative facts as Gefco's claims of breach of contract and tortuous interference. In the Oklahoma action, Gefco contends that by contracting with Drillmaster, Mid–America breached the exclusivity provisions of the distribution agreement between Gefco and Mid–America. Mid–America, on the other hand, contends that it developed relationships with other drilling manufacturers, including Drillmaster, in reliance on the August 1991 letters in which Gefco purportedly canceled the exclusivity provisions. Accordingly, the court finds that Mid–America's claim of fraud and/or misrepresentation is a compulsory counterclaim.

Similarly, Mid–America's claims of tortuous interference with contractual relationship and business relationship, as well as claims of violations of the Uniform deceptive trade practices act also arise from the violation/cancellation of the exclusivity provision and the subsequent termination of the distribution agreement. Mid–America bases it claims of interference on Gefco's February 1995 notice to various customers about the termination of Gefco and Mid–America's relationship, Gefco's filing for injunctive relief in Oklahoma against Mid–America, and Gefco's discussions with prior customers about the termination and their choice of other distributors. The court finds Mid–America's claims of tortuous interference and violation of the ATPA to be compulsory counterclaims as they are inextricably intertwined with the dissolution of the exclusivity provision and distribution agreement.

Mid–America asserts that its claims against Gefco were not compulsory counterclaims to the original Oklahoma action because they fall within an exception to FRCP 13(a). That rule provides that a pleading need not state a counterclaim where the claim requires for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. FRCP 13(a). Accordingly, Mid–America alleges the Oklahoma court's dismissal of Owens and Drillmaster from the Oklahoma Action for lack of personal jurisdiction precluded it from bringing its claims against Gefco as counterclaims, as the presence of Owens and Drill–Master was necessary to the adjudication of these claims. The court disagrees.

Although the Oklahoma Court had no jurisdiction over Owens and Drill–Master, the court finds that neither of those parties was necessary to the adjudication of Mid–America's claims against Gefco. Mid–America offers no reasons for why its claims against Gefco required the presence of Owens and Drill–Master. Rather, Mid–America simply asserts that these two parties were "necessary." (Pl.'s Resp. to Defs' Mot. To Dismiss at 9.) The court finds that these parties

were not "necessary" to the adjudication of Mid–America's claims. First, the presence of neither Owens nor Drillmaster was necessary to accord complete relief among the parties already present in the Oklahoma action, namely Gefco and Mid–America. The claims at issue were to be asserted by Mid–America against Gefco. Mid–America asserts no claims of fraud and/or misrepresentation, tortuous breach, or deceptive trade practices against Owens or Drillmaster. Thus, the recovery on these claims by Mid–America need not involve Drillmaster or Owens. Second, the court finds that neither Drillmaster nor Owens claims an interest relating to the subject of the action such that the party's ability to protect that interest would be impaired or impeded without their presence in the action. Subsequent similar claims by Owens and Drillmaster are not barred by doctrines of issue and claims preclusion, as Owens and Drillmaster were not parties to the Oklahoma Action. Similarly, the absence of Drillmaster and Owens would not leave either Mid–America nor Gefco subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations of the claimed interest.

▪▪▪▪ Where a party fails to plead a counterclaim, it is precluded from asserting that claim in future litigation. *Cleckner v. Republic Van and Storage Co.*, 556 F.2d 766, 769 n. 3 (5th Cir.1977); 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane Federal Practice and Procedure § 1411 at 79. As the United States Supreme Court has clearly stated, the purpose behind Rule 13(a) is to prevent multiplicity of lawsuits. "The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action in which that counterclaim became the basis of the complaint." *Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The instant case provides a clear example of the exact situation that Rule 13(a) was intended to prevent. Accord-

ingly, the court finds that Mid–America's claims against Gefco are due to be dismissed for lack of subject matter jurisdiction.

## ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) Claims One, Two, Three and Five of Gefco's Counterclaim against Mid–America, be and the same are hereby STRICKEN.

(2) Claim Four of Gefco's Counterclaim against all Plaintiffs, and Claim Four of Plaintiffs' Complaint against Gefco be and the same are hereby DISMISSED WITH PREJUDICE.

(3) Mid–America's Motion to Dismiss Gefco's counterclaims be and the same is hereby DENIED as MOOT.

(4) Gefco's Motion to Transfer Venue be and the same is DENIED.

(5) Mid–America's Motion for Oral Argument be and the same is hereby DENIED.

(6) Gefco's Motion to Dismiss Mid–America's claims as compulsory counterclaims be and the same is hereby GRANTED.